UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| WALLACE M. STOKES, | ) | | |
| | ) | | |
| Petitioner, | ) | Nos. | 1:12-CR-143-CLC-CCS |
| | ) | | 1:14-CV-156-CLC |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | Judge Curtis L. Collier |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

This matter comes before the Court on the motion of *pro se* petitioner Wallace M. Stokes, Jr. ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 387, "Petition"].[1] Petitioner filed a Memorandum [Doc. 388] with his Petition and attached his Affidavit [Doc. 388-1] to his Memorandum. The Government has responded [Doc. 399] in opposition. The Government has also provided the Affidavit [Doc. 399-1] of Petitioner's counsel Attorney Russell L. Leonard. The parties appeared for an evidentiary hearing on one of the Petitioner's allegations on September 25, 2017. Assistant Federal Defender Gianna Maio represented the Petitioner, who was also present. Assistant United States Attorney Michael D. Porter represented the Government. The Court finds the materials submitted, the evidence and arguments offered at the evidentiary hearing, and the complete record of the underlying criminal case conclusively demonstrate that the Petitioner is not entitled to relief on the claims asserted in his Petition. Accordingly, the Petitioner's motion is **DENIED** for the reasons stated herein.

---

[1] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings ("Section 2255 Rules"), the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion. The Court has also considered all the files, records, transcripts, and correspondence relating to Petitioner's conviction in criminal Case No. 1:12-CR-143-CLC-CCS. All citations to the record are to the docket in Case No. 1:12-CR-143-CLC-CCS.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

From January 2009 to October 2012, Petitioner conspired with others to manufacture and distribute methamphetamine in Monroe County, Tennessee. [Doc. 130, Plea Agreement at ¶3(a)] On July 10, 2013, Petitioner entered a plea of guilty, pursuant to a written plea agreement [Doc. 130], to conspiracy to manufacture and distribute methamphetamine before United States Magistrate Judge Susan K. Lee [Docs. 208 & 215]. On July 31, 2013, the undersigned accepted [Doc. 232] the Defendant's guilty plea. On November 7, 2013, the Court sentenced Stokes to three hundred (300) months of imprisonment [Doc. 341]. The Judgment of conviction [Doc. 343] was entered on November 19, 2013. Petitioner did not file a notice of direct appeal. Petitioner was represented by attorney Russell L. Leonard ("Counsel") at all stages of the proceedings. Petitioner now contends that he received the ineffective assistance of counsel [Doc. 387].

Petitioner's rearraignment hearing was held before Judge Lee on July 10, 2013. When Petitioner was asked if anyone had threatened him into entering the plea agreement, he hesitated [Doc. 254]. This led to a lengthy discussion of Petitioner's belief that he had been threatened with the death penalty in order to give his incriminating pre-indictment statements.[2] Judge Lee then recessed the hearing and allowed the Petitioner to consult with Counsel about the pre-

---

[2] This episode apparently stemmed from Petitioner's pre-indictment interviews with Agent Joshua Melton ("Agent Melton") of the Tennessee Bureau of Investigation ("TBI"). It was during these interviews that Petitioner admitted to his involvement in the meth conspiracy. In his current § 2255 motion, however, Petitioner argues his confession was coerced. He claims he confessed because Agent Melton (1) promised him he would receive a lighter sentence if he confessed (discussed below); and (2) threatened him with the death penalty with respect to a separate but related murder investigation if he did not confess to the drug crime (also discussed below). Petitioner does not expressly reference these interviews with Agent Melton in the rearraignment hearing transcript. But this appears to be the source of Petitioner's hesitation when asked whether he was threatened into pleading guilty.

indictment statements and whether he wanted to go forward with his change of plea [*Id.*]. After this consultation, Counsel informed the Court, out of the presence of Petitioner, that the Petitioner "understands what transpired before the indictment, before his arrest, whether he feels he was duped or not, that there were choices that he could have made then that he didn't make." [*Id.*] Counsel confirmed that, if he had thought there was a basis for filing a motion to suppress the Petitioner's statements, he would have done so. Judge Lee reiterated she was willing to continue the hearing for a week if needed. Counsel declined, stating he had already discussed the case with his client "as thoroughly as he had ever discussed a case with a client." [*Id.*] When Petitioner returned to the courtroom, Counsel stated he and the Petitioner had previously discussed the pre-indictment statements, he had advised the Petitioner that there was no basis for challenging those statements, and the Petitioner had decided to enter into a plea agreement instead. Petitioner agreed he was guilty and went forward with the change of plea.

At Petitioner's sentencing hearing on November 7, 2013, Counsel argued for a downward departure based on the Government "promising" or "assuring" Petitioner he would receive a lighter punishment for his cooperation [Doc. 397]. The Government denied giving such assurances. To resolve the dispute, Agent Melton testified. Agent Melton denied making any such promises to Petitioner and testified he told Petitioner only that he would "pass his statements along to the prosecutor's office to see what his involvement was or was not in the conspiracy." [*Id.*] Counsel cross-examined Agent Melton, during which Petitioner called Agent Melton a liar, prompting a lecture from the Court [*Id.*]. The Court found no such promises were made, denied Petitioner's motion for a downward variance, and sentenced Petitioner to 300 months' imprisonment.

In January 2014, Petitioner procured a copy of the docket sheet in his case, which showed no notice of appeal had been filed. In early March 2014, Petitioner instructed his sister to request materials in Petitioner's case file from Counsel for the purposes of Petitioner challenging his sentence [Doc. 376-1]. Counsel's office sent the requested materials to Petitioner's sister. Petitioner then wrote Counsel another letter on March 19, 2014, requesting additional materials [Doc. 374]. Petitioner also asked in this letter why Counsel had not filed a notice of appeal as Petitioner had directed in his letter to Counsel two days after the sentencing hearing.[3] Counsel responded with a letter on April 3, 2014 explaining he had not received a letter from Petitioner instructing Counsel to file an appeal [Doc. 376-2].

Petitioner wrote Counsel again on April 8, 2014, alerting him that he (Petitioner) had filed a § 2255 motion because Counsel had not filed a notice of appeal as instructed [Doc. 399-1]. Counsel responded on April 15, 2014, reiterating that he had never received a letter from Petitioner asking him to file an appeal [Doc. 376-3]. Counsel further noted "[h]ad [he] received such a letter, it is a simple procedure to file a notice of appeal," and would have done so [*Id.*].

On September 25, 2017, the undersigned held an evidentiary hearing with regard to the Petitioner's contention that he received the ineffective assistance of counsel because Mr. Leonard failed to consult with him about filing a direct appeal and failed to file a direct appeal when expressly asked to do so. At the hearing, Counsel testified he discussed with Petitioner before his rearraignment hearing the pros and cons of pleading guilty and the rights Petitioner would give up by so pleading. Counsel did not meet with Petitioner after his sentencing hearing. Counsel noted, however, that it was his practice to meet with clients before sentencing to explain the procedure and post-sentencing options. Counsel testified he did meet with Petitioner before

---

[3] Petitioner initially averred he sent his first letter to Counsel asking him to file a notice of appeal on November 21, 2013. He now maintains the correct date was November 9, 2013.

his sentencing hearing, but could not recall specifically whether he consulted with Petitioner about an appeal during this meeting.[4]

Counsel further testified that he interacted with Petitioner neither immediately following the sentencing hearing nor in the weeks that followed. He sent Petitioner no written correspondence and received no mail or phone calls from the Petitioner. Counsel testified the first time Petitioner contacted him after the sentencing hearing was through his March 19, 2014 letter requesting documents from his case file and asking why Counsel had not filed a notice of appeal. Counsel specifically denied receiving a letter from Petitioner two days after the sentencing hearing instructing him to file an appeal.

## II.     STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F.Supp.2d 882, 886 (E.D. Tenn. 2000).

To obtain relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error

---

[4] On direct examination, Counsel suggested that he had, in fact, advised Petitioner of his right to appeal during their pre-sentencing meeting. However, on cross examination, Counsel stated it was his general practice to discuss appellate options with his clients prior to sentencing hearings. But because several years had passed since Petitioner's sentencing, he could not specifically remember whether he consulted with Petitioner about a right to appeal.

5

of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

In his § 2255 motion, the Petitioner contends that he received the ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. at 687; *see also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy") (internal citation omitted).

6

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion). The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697. With these principles in mind, the Court turns to the Petitioner's claims.

### III. DISCUSSION

Petitioner asserts three ways[5] in which he contends Counsel was ineffective: (1) Counsel failed to investigate whether the Petitioner's confession was coerced or to challenge the confession; (2) Counsel failed to object at sentencing or to challenge on appeal a judicially-determined fact, which triggered a higher mandatory sentence; and (3) Counsel did not consult with him about filing a direct appeal and did not file a direct appeal at the Petitioner's request. The Court will consider each of this allegations in turn.

**A. Petitioner's Confession**

Petitioner contends that he received the ineffective assistance of counsel, because Counsel failed to investigate or challenge his confessions made prior to the charges in this case. Petitioner asserts that prior to his Indictment in this case, Agent Melton questioned him twice in connection with a murder investigation. According to Petitioner, during these interrogations, Agent Melton insinuated that he would not believe the Petitioner's denial of involvement with the murder, if the Petitioner was not honest with him about his involvement in drug trafficking. Petitioner alleges that Agent Melton also employed a "scare tactic" of threatening to charge him with the murder, if he was not honest about everything. The Petitioner states that Agent Melton did not include his threat to charge the Petitioner with murder in either of his reports about his interviews of the Petitioner. Petitioner contends that Agent Melton also told him that he was not

---

[5] In the Petition [Doc. 387], Petitioner lists three bases for his claim that he received the ineffective assistance of counsel. In his brief [Doc. 388] filed in support of his Petition, Petitioner also summarily alleges that Counsel had a conflict of interest in advising Petitioner to plead guilty and Counsel failed to advise Petitioner properly of the consequences of his guilty plea. The Court finds these allegations to be undeveloped, conclusive statements unsupported by law or facts. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that if "claims are stated in the form of conclusions without any allegations of facts in support thereof," a § 2255 motion is "legally insufficient to sustain review"). The Court finds that the Petitioner's summary allegations do not merit review or are subsumed in his three primary allegations.

really interested in the drugs but was interested in the murder, which implied that Agent Melton was not going to charge him with the drugs. The Petitioner also asserts that both times he was questioned by Agent Melton, Agent Melton knew that Petitioner was under the influence of methamphetamine because the Petitioner answered him affirmatively, when Agent Melton asked if he was on drugs.

The Petitioner contends that after he was arrested on the Indictment in this case, Counsel advised him to make an official proffer to Agent Melton and led Petitioner to believe that cooperating in this way would help Petitioner's case. Petitioner said he again gave a statement to Agent Melton with Counsel present. Petitioner contends that Counsel told him that this final statement would lead to a downward departure in this case. The Petitioner states that Agent Melton testified at his sentencing hearing and characterized Petitioner as the number one suspect in the murder case and also testified that Petitioner "was not the first one to proffer." [Doc. 388, p.16] The Petitioner argues that Counsel did not cross-examine Agent Melton at the sentencing hearing.

Petitioner contends that he told Counsel that the only reason he waived his right to counsel and spoke to Agent Melton in the pre-indictment interviews was because Agent Melton threatened to charge him with the murder. Petitioner argues that Counsel failed to challenge his pre-indictment statements to Agent Melton as coerced by threats of the murder charge and illusory promises of leniency. Petitioner also argues that Counsel also failed to object or cross-examine Agent Melton a the sentencing hearing about Agent Melton's testimony that Petitioner was the number one suspect in the murder case and was not the first co-conspirator to give a statement. He asserts that Counsel also did not effectively cross-examine Agent Melton about his promises to help the Petitioner. Petitioner asserts that Counsel's failure to challenge the prior

9

statements or to cross-examine Agent Melton resulted in the abandonment of any adversarial testing of the Government's case.

Based upon the discussion at the rearraignment hearing [Doc. 254, Transcript], the Court finds that Counsel investigated the Petitioner's pre-indictment statements and considered challenging those statements. The Court also finds that Counsel ultimately concluded and Petitioner agreed that challenging the pre-indictment statements would not be in Petitioner's best interest. At the rearraignment hearing before Magistrate Judge Lee, Petitioner hesitated when asked if anyone had threatened him in order to get him to enter into the plea agreement. [Doc. 254, p.15] Petitioner's hesitation on this question led to a discussion of Petitioner's belief that he had been threatened with the death penalty in order to give his pre-indictment statements. [Doc. 254, pp.16-19] Judge Lee recessed the Petitioner's hearing and allowed the Petitioner to consult with Counsel about the pre-indictment statements and whether he wanted to go forward with his change of plea. [Doc. 254, p. 19-20] After this consultation, Counsel informed the Court, before the Petitioner returned to the courtroom, that the Petitioner "understands what transpired before the indictment, before his arrest, whether he feels he was duped or not, that there were choices that he could have made then that he didn't make." [Doc. 254, p. 20] Counsel confirmed that, if he had thought there was a basis for filing a motion to suppress relating to the Petitioner's statements, he would have done so. [Doc. 254, p. 21] Counsel also told Judge Lee that he had thoroughly discussed issues relating to the Petitioner's statements with the Petitioner. [Doc. 254, p.22]

When Petitioner returned to the courtroom, Counsel stated that he and the Petitioner had previously discussed the pre-indictment statements, he had advised the Petitioner that there was no basis for challenging these statements, and the Petitioner had decided to enter into a plea

agreement instead. [Doc. 254, p.24] The Petitioner agreed that he was guilty and wanted to go forward with the change of plea. [Doc. 254, p.24] Judge Lee then proceeded with the questions to determine whether the Petitioner's change of plea was knowingly and voluntarily made. Judge Lee concluded [Doc. 215] and the undersigned agreed [Doc. 232] that the Petitioner knowingly and voluntarily entered a change of plea. Based upon the discussion at the rearraignment hearing, the Court finds that Counsel did investigate the Petitioner's statements and did evaluate whether he should challenge those statements. The Petitioner and Counsel both decided that it was in the Petitioner's best interest not to pursue such a motion. Accordingly, the Court finds that the Petitioner was not prejudiced by Counsel's strategic decision, in which Petitioner joined, to forego a suppression motion on the Petitioner's statements.

With regard to the Petitioner's allegation that Counsel did not cross-examine Agent Melton at the sentencing hearing, this contention is also not borne out by a review of the transcript. [Doc. 397, Sentencing Hearing Transcript] At the sentencing hearing, Counsel contested the prosecutor's claim that no promises or assurances were given to the Petitioner at the time he gave his statements. [Doc. 397, p. 57] Counsel argued that while he was not present for the pre-indictment interviews of the Petitioner, he was present for the official proffer, at which the agent told Petitioner that he could help himself by giving a statement. [Doc. 397, p. 58] The prosecution presented the testimony of Agent Melton, who testified that prior to Petitioner's pre-indictment interview on his participation in the conspiracy, he told Petitioner that he could not make any promises to him but that he would pass along his statement to the prosecutor's office. [Doc. 397, p.62] Counsel then cross-examined Agent Melton about whether he made any promises to the Petitioner at either his pre-indictment statements or his official proffer. [Doc. 397, pp. 63-68] Counsel expressly cross-examined Agent Melton about whether

11

he questioned Petitioner about his role in the murder investigation. [Doc. 397, p. 67-68] The Court finds that Counsel did subject the Government's case to adversarial testing. While Counsel did not question Agent Melton's statement on rebuttal that the Petitioner remained a suspect in the murder case, that comment by Agent Melton was not a factor in the Court's determination that Agent Melton made no promises or assurances to the Petitioner that the Government has failed to honor. [Doc. 397, pp. 70-71]

The Court finds that Counsel has done all of the things that Petitioner contends he ought to have done, i.e., investigated his pre-indictment statements, considered the filing of a suppression motion in relation to these statements, and cross examined Agent Melton's testimony with regard to Petitioner's statements at the sentencing hearing. Petitioner affirmed Counsel's decision not to file a suppression motion with regard to his statements at his rearraignment hearing. Thus, the Court finds that the Petitioner has failed to show that Counsel's performance was in any way deficient with regard to Petitioner's statements.

**B. Sentencing Enhancement**

Petitioner argues that Counsel provided ineffective assistance because he did not object or appeal the application of an enhancement pursuant to 21 U.S.C. § 851, which triggered a higher mandatory minimum sentence in his case. Petitioner contends that because the fact of his prior felony drug conviction was never presented to the grand jury or included in the Indictment, this prior conviction was a "judge-found fact." Relying on *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), Petitioner asserts that because his prior drug conviction increased his mandatory minimum sentence, it is an element of the offense that had to be submitted to the jury and found beyond a reasonable doubt. He also alleges that Counsel failed to advise him that his prior conviction would trigger a mandatory minimum sentence. He contends that if counsel had

advised him of this fact, he would not have entered a guilty plea and, thus, his guilty plea was not knowingly and voluntarily made.

In *Alleyne*, the Supreme Court held that, as with facts that increased the sentence over the maximum penalty, "[f]acts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." 133 S.Ct. at 2158, 2163. However, the Court noted that it had previously created a narrow exception for the fact of a prior conviction with regard to facts that increase the sentence over the maximum penalty and that it was not revisiting that exception in the *Alleyne* case. *Id.* at 2160, n.1. "[F]ederal courts treat the fact of prior convictions differently than other facts that might trigger a change in a defendant's minimum or maximum sentence." *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014). Because the fact that would lead to the imposition of a mandatory minimum sentence in the Petitioner's case was his prior felony drug conviction, the undersigned could find that fact without running afoul of *Alleyne*.[6] *See Cooper*, 739 F.3d at 884.

Moreover, the Court finds that both the prosecutor and Magistrate Judge Lee advised the Petitioner that a mandatory minimum sentence of twenty years applied if the Petitioner had a prior felony drug conviction. [Doc. 254, pp. 30-31] Prior to entering a plea of guilty, Petitioner stated that he understood that a twenty-year mandatory minimum sentence could be imposed based upon his prior conviction. [Doc. 31, 34] For both of these reasons, the Court finds that the Petitioner did not suffer prejudice from Counsel's failure to object or appeal the consideration of his prior conviction, although that fact was not stated in the charging instrument.

---

[6] The Government also contends that *Alleyne* does not apply retroactively to cases on collateral review. *See In re Mazzio*, 756, F.3d 487, 490 (6th Cir. 2014). In this case, however, the Petitioner was sentenced on November 7, 2013, nearly five months after the Supreme Court decided *Alleyne* on June 17, 2013. Thus, *Alleyne* was controlling case law at the time of the Petitioner's sentencing hearing.

### C. Direct Appeal

Petitioner contends [Doc. 388] that at his November 7, 2013 sentencing hearing, the Court informed him that he had a right to file a direct appeal and that he had ten days in which to file a notice of appeal. Petitioner alleges that Counsel left immediately at the conclusion of the sentencing hearing, without consulting with him about a direct appeal. Petitioner also alleges that two days after his sentencing, he wrote a letter to Counsel asking him to file a direct appeal in his case. Petitioner contends that he sent the letter by first class mail, postage paid, to Counsel at 315 North High Street, Winchester, Tennessee 37398. However, according to the Petitioner, Counsel never responded to this letter. Petitioner maintains that after he arrived at the Federal Correctional Center in Forrest City, Arkansas, he asked his sister to send him a copy of the docket sheet and, at that point, he learned that no notice of appeal appeared on the docket sheet. Petitioner states that he then contacted Counsel and the Clerk of the Court of Appeals for the Sixth Circuit to ask about his appeal. The Petitioner asserts that, thereafter, Counsel advised that he had never received Petitioner's November 9, 2013 letter, asking him to file an appeal.

The Government argues [Doc. 399] that Petitioner did not demonstrate to Counsel that he was interested in appealing, nor did Petitioner direct Counsel to file a notice of appeal within the time period for doing so. In support of its argument, the Government filed the Affidavit [Doc. 399-1] of Counsel, who states Petitioner

> never indicated a desire to pursue a direct appeal and never asked me to file a notice of appeal on his behalf within the allowable time. The first time I was made aware that Mr. Stokes had any interest in pursuing an appeal was in his cover letter of April 8, 2014, which was accompanied with his Motion to Compel Attorney to Surrender the Case File[.]

The Government asks the Court to credit Counsel's Affidavit over that of Petitioner. It also observes that Petitioner previously asserted that he mailed the letter requesting a direct appeal to Counsel on November 21, 2013 [Doc. 374, Mtn to Compel, p.2], rather than November 9, 2013.

At the September 25, 2017 evidentiary hearing, the Government reiterated its argument that Petitioner never demonstrated to Counsel a desire to appeal. The Government noted again that Counsel never received the letter Petitioner allegedly sent two days after the sentencing hearing instructing him to file an appeal, that Petitioner had not produced a copy of this alleged letter, and that had Counsel received this letter, he would have filed the notice of appeal as instructed. It added that Counsel discussed with Petitioner before his rearraignment the pros and cons of pleading guilty and the rights waived by doing so. The Government further noted that it was Counsel's standard practice to meet with his clients before sentencing to discuss post-sentencing options, including appeals, and that Petitioner had been advised by the Court of his right to appeal during the sentencing hearing.

Petitioner, in contrast, argued that Counsel had a constitutional duty to consult with Petitioner about filing an appeal but never did so. Petitioner argued that even if the Court found Petitioner never sent Counsel a letter directing an appeal be filed, Petitioner "reasonably demonstrated" to Counsel his desire to do so through the concern he expressed over the voluntariness of his confession during both his rearraignment and sentencing hearings. Furthermore, Petitioner argued that any "rational defendant" with such concerns would have wanted to appeal, and that, as such, Counsel's duty to consult with Petitioner about an appeal was triggered. Petitioner then pointed to Counsel's inability to conclusively recall discussing appellate options with Petitioner in their pre-sentencing meeting. Petitioner argued that this gap in Counsel's recollection—though it did not establish that such a discussion never happened—

should nonetheless inure to Petitioner's benefit, with the Court finding no consultation with Petitioner about an appeal occurred.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In such a case, the defendant is entitled to a belated appeal without having to show that his basis for the appeal likely has merit. *Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969). The Supreme Court has rejected a bright-line rule that counsel must always consult with a defendant about an appeal. *Flores-Ortega*, 528 U.S. at 480. Instead, the Supreme Court

> hold[s] that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* The undersigned must evaluate the reasonableness of counsel's conduct by examining the totality of the circumstances, including what counsel knew or should have known. *Id.*

Examining the totality of the circumstances in the instant case, the Court finds that Counsel neither was specifically instructed to file an appeal, nor had a constitutional duty to consult with Petitioner about an appeal. Counsel testified that he never received the November 9, 2013 letter in which Petitioner allegedly instructed Counsel to file an appeal, and that Petitioner never otherwise directed Counsel to do so. Moreover, Counsel testified that had Petitioner asked him to file a notice of appeal, Counsel would have done as instructed. The Court further notes that Petitioner initially claimed that the date on which he sent Counsel the letter asking to file an appeal was November 21, 2013—two weeks after his sentencing hearing rather than two days, as later described. Further, Petitioner has submitted to the Court three

letters written to Counsel in March and April of 2014. Notably, though, Petitioner has not produced a copy of the letter allegedly written to Counsel on November 9, 2013. As such, the Court credits the testimony of Counsel over Petitioner and finds Petitioner never specifically instructed Counsel to file an appeal.

Furthermore, the constitutional duty to consult with Petitioner about an appeal was never triggered.[7] First, Petitioner has not established that a rational defendant in his position would want to appeal. Relevant considerations as to this inquiry include the entering of a plea agreement, reductions in the sentence for acceptance of responsibility, and the recommendation of a sentence at the bottom of the guideline range. *Shelton v. United States*, 378 F. App'x 536, 539 (6th Cir. 2010). Here, Petitioner pled guilty, received a three-point reduction for his acceptance of responsibility, and was sentenced at the low end of the applicable guideline range.[8] Further, Petitioner has failed to otherwise establish any non-frivolous bases for an appeal. Petitioner maintains that the voluntariness of his confession provides such a basis. To the contrary, the transcript of Petitioner's rearraignment hearing shows that once Petitioner

---

[7] There remains the preliminary question as to whether Counsel did, in fact, consult with Petitioner about filing an appeal. During the evidentiary hearing, Counsel stated, on cross examination, that it was his general practice to discuss appellate options with his clients prior to sentencing hearings, but he could not remember whether he consulted with Petitioner specifically about a right to appeal. Petitioner cites *Bush v. United States*, Nos. 3:06-cr-160, 3:08-cv-116, 2008 WL 2705227, at *1 (E.D. Tenn. July 7, 2008), for the proposition that when an attorney cannot recall whether a consultation about an appeal occurred, the court should find the petitioner was never so consulted. This reliance on *Bush*, however, is misplaced. There, the attorney had no recollection whatsoever of the case at issue, and the Government did not oppose the petitioner's motion. *Id*. In contrast, the Sixth Circuit has suggested that a gap in an attorney's memory as to whether a certain conversation occurred between the attorney and the client is not necessarily fatal where it was the attorney's standard practice to engage in such conversations. *See Guerrero v. United States*, 383 F.3d 409, 417-18 (6th Cir. 2004). However, the Court need not decide, here, whether Counsel did, in fact, consult with Petitioner about an appeal, because the Court finds the duty to consult was not triggered.

[8] Petitioner's guideline range was 292 to 365 months. The Court's sentence was 300 months.

17

suggested his plea had been coerced, Judge Lee recessed the hearing and gave Petitioner ample time to speak with Counsel. Following this recess, Counsel assured Judge Lee that he had discussed the case "as thoroughly as he had ever discussed a case with a client" and had concluded there was no legitimate basis for challenging Petitioner's confession.

Second, Petitioner has failed to establish he "reasonably demonstrated" an interest in filing an appeal. Petitioner argues that even if the Court finds—as it does—that Petitioner never specifically instructed Counsel to file an appeal, Petitioner "reasonably demonstrated" an interest in appealing through the concern he expressed during both his rearraignment and sentencing hearings over the voluntariness of his confession. The Court, however, fails to see how the discussion with Counsel during rearraignment and calling a witness a liar during sentencing "reasonably demonstrate" such an interest. Petitioner's conclusion is drawn further into question in light of how Petitioner's concerns were resolved in each of the respective hearings. During rearraignment, Petitioner engaged in detailed discussions with both Judge Lee and Counsel, yet proceeded thereafter to enter his guilty plea. At sentencing, Counsel cross-examined Agent Melton about specific pre-indictment interactions with Petitioner and any improper tactics used therein. The Court found no such tactics were used. And despite the seriousness of the crime and Petitioner's extensive criminal history, the Court sentenced Petitioner at the low end of his guideline range. As such, the Court finds Petitioner failed to reasonably demonstrate an interest in filing an appeal within the time period for doing so.

**IV.     CONCLUSION**

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion. Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Rule 24(a) of the Federal Rules of Appellate Procedure further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons that the Court denies a certificate of appealability, the Court determines any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F.Supp.2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**